**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ELLIS WALKER,

                              Plaintiff,

              - v -                                            Civ. No. 9:11-CV-287
                                                                        (LEK/RFT)

DEBORAH G. SCHULT, *Warden, FCI Ray Brook*; RUSSELL
PERDUE, *Warden, FCI Ray Brook*; DAVID SALAMY, *Unit
Manager, FCI Ray Brook*; SEPANEK, *Counselor, FCI Ray Brook*;
DAVID PORTER, *Associate Warden, FCI Ray Brook*; ANNE
MARY CARTER, *Associate Warden, FCI Ray Brook*; STEVEN
WAGNER, *Associate Warden, FCI Ray Brook*; J.L. NORWOOD,
*Regional Director*; HARLEY LAPPIN, *Director, Bureau of Prisons*,

                              Defendants.

**APPEARANCES:**                                            **OF COUNSEL:**

ELLIS WALKER
Plaintiff, *Pro Se*
05776-028
Allenwood Medium Federal Correctional Institution
Inmate Mail/Parcels, P.O. Box 2000
White Deer, PA 17887

HON. RICHARD S. HARTUNIAN                       CHARLES E. ROBERTS
United States Attorney for the Northern District of New York    Asst. United States Attorney
Attorney for Defendants
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Ellis Walker brings this civil rights action alleging that while he was

incarcerated at the Federal Correctional Institution in Ray Brook, New York ("FCI Ray Brook"),

the Defendants violated his constitutional rights by subjecting him to a cell shared by five other

inmates, and that the cell is noisy, unsanitary, contains uncomfortable twenty-eight-inch-wide bunk

beds with no ladder access, and is without adequate ventilation or privacy.  Dkt. No. 1, Compl.

Defendants bring a Motion to Dismiss, filed pursuant to Federal Rules of Civil Procedure 12(b)(1)

and 12(b)(6), Dkt. No. 25, which Plaintiff opposes, Dkt. No. 29.  For the reasons that follow, it is

hereby recommended that Defendants' Motion be **granted** and that this case be **dismissed**.

## I.  BACKGROUND

In accordance with the standard used in assessing a motion to dismiss, the following facts

are derived from the allegations in Plaintiff's Complaint and are taken as true.  *See infra* Part II.A.2.

On November 18, 2008, while at FCI Ray Brook, Plaintiff was placed into a "6-man cell of

about 170 to 174 square feet . . ., which amounts to about 28 to 29 square feet each."  Compl. at p.

6, ¶ 1.  Plaintiff's bed is twenty-eight inches wide, which forces Plaintiff to "sleep on his side;

rotating back and forth[.]"  *Id.* at p. 7, ¶ 7.  The beds are bunked and there are no ladders to climb

up to the elevated beds such that "it requires [an inmate] to climb on a chair, then on another

inmate's locker[.]"  *Id.* at p. 7, ¶ 8.  While employing this process, Plaintiff once fell back onto a

chair.  *Id.* at p. 7, ¶ 9.  The noise inside the cell is constantly loud, resulting in a lack of sleep for

Plaintiff.  *Id.* at p. 8, ¶¶ 13-16.  Defendants are "fully aware that the noise in the unit is so loud and

constant because of the overcrowding that whenever a fight is occurring in the unit, the guard never

is aware of this until the guard is told by one of the inmate snitches."  *Id*. at p. 8, ¶ 13.  Defendants

purposefully "mix[] different races and gang members in the . . . cell [in order] to create problems."

*Id.* at p. 6, ¶¶ 5-6.  The cell is also unsanitary, with urine "sometimes . . . on the toilet" or splattered

on the toilet, there is a shortage of cleaning supplies, and there is no privacy for inmates when they

use the bathroom; the cell also lacks adequate ventilation such that it is is cold during the winter and

hot during the summer.  *Id.* at p. 7, ¶ 10 & pp. 8-9, ¶¶ 18-21.

## II. DISCUSSION

### A. Standard of Review

*1. Federal Rule of Civil Procedure 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing FED. R. CIV. P. 12(b)(1)). Federal courts are "duty-bound . . . to address the issue of subject matter jurisdiction at the outset." *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 929 (2d Cir. 1998). In contemplating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court must "accept as true all material factual allegations in the complaint[,]" though "argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196 (2d Cir. 1992) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) & *Norton v. Larney*, 266 U.S. 511, 515 (1925)). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that [jurisdiction] exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) (citations omitted); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Furthermore, because Plaintiff brings this action *pro se*, his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curium*) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

*2. Federal Rule of Civil Procedure 12(b)(6)*

On a motion to dismiss, the trial court's function "is merely to assess the legal feasability of

the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1960 (citing

*Twombly*).[1]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. at 1949.  This plausibility standard "is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  *Id*.  Thus, in spite of the deference the court is bound to give to the plaintiff's

allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or

she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been

alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459

U.S. 519, 526 (1983).  The process of determining whether a plaintiff has "nudged [his] claims . .

. across the line from conceivable to plausible," entails a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Ashcroft v. Iqbal*, __ U.S.

__, 129 S.Ct. at 1950-51.

## B. *Bivens* Cause of Action

In filing this action, Plaintiff utilized the forms associated with civil actions brought pursuant

to 42 U.S.C. § 1983.  *See* Compl.  However, § 1983 does not provide a cause of action against

federal agencies or employees, such as the Defendants in this instant action.  Reading the Complaint

in a light most favorable to Plaintiff, who is proceeding *pro se*, Plaintiff's constitutional claims

regarding his conditions of confinement will be considered as filed under *Bivens v. Six Unknown*

---

[1] By its opinion in *Bell Atl. Corp. v. Twombly* and then again in *Ashcroft v. Iqbal*, the Supreme Court abrogated the often-cited language of *Conley v. Gibson* "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 561 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)).  In so doing, the Court found that *Conley* "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Id*. at 563.

*Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).  *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) (construing *pro se* section 1983 claims against federal defendants as *Bivens* claims).

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court recognized the existence of a cognizable claim in certain instances for alleged constitutional violations committed by federal agents.  *See Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981) (noting that a *Bivens* action is a judicially-created remedy); *see also Carlson v. Green*, 446 U.S. 14, 18 (1980) ( "Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.").  The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities.  *See Polanco v. United States Drug Enforcement Admin.*, 158 F.3d 647, 652 (2d Cir. 1998) (cited in *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007)).   In order to state a *Bivens* claim, a plaintiff must allege a constitutional deprivation by defendants acting under color of federal law.  *Soichet v. Toracinta*, 1995 WL 489434, at *3 (S.D.N.Y. Aug. 16, 1995).  Generally, case law under 42 U.S.C. § 1983 applies to *Bivens* cases.  *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (quoting *Ellis v. Blum*, 643 F.2d at 84).

### C. Exhaustion

In their Motion to Dismiss, Defendants assert the affirmative defense that Plaintiff has not exhausted his available administrative remedies prior to bringing this action, and as such, this Court does not have subject matter jurisdiction over Plaintiff's claims.  Dkt. No. 25-2, Defs.' Mem. of Law, at pp. 2-5. Specifically, Defendants claim that the copies of the administrative remedy requests that Plaintiff attached to his Complaint, which were compared to records maintained by the Bureau

of Prisons and deemed authentic, show that while Plaintiff complained about the alleged risk of inmate violence in his six-person cell and the lack of ladder access to his bunk bed, Plaintiff did not raise concerns regarding the cleanliness of his cell until his Central Office Administrative Remedy Appeal, and did not complain about the noise in his cell until his Regional Administrative Remedy Appeal. *Id*. at pp. 3-4 (citing Compl. at Exs. 4 & 6).  Furthermore, Defendants contend that Plaintiff never raised concerns regarding cell ventilation, the size of his bed, nor toilet privacy. *Id.* at p. 4. In his Complaint, Plaintiff maintains that he exhausted his administrative remedies but was "lied to and spun in circles and subsequently denied relief."  Compl. at p. 2, ¶ 4(b).  In his Opposition papers, Plaintiff summarily reiterates that he fully exhausted his administrative remedies.  Dkt. No. 29, Pl.'s Opp'n, at pp. 3-4.

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The PLRA applies equally to *Bivens* claims.  *Id*. at 524.

When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice thus allowing the prisoner to submit a grievance to the particular institution.  42 U.S.C. § 1997e(a); *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999); *see also Melo v. Combes*, 1998 WL 67667 (S.D.N.Y. Feb. 18, 1998); *Midgette v. Doe*, 1997 WL 634280, at *1 (S.D.N.Y. Oct. 15, 1997).

However, if the prisoner failed to exhaust administrative remedies which were available to him after the onset of conditions giving rise to his complaints, yet such remedies are no longer available, *i.e.*, prisoner was transferred to another institution or released from custody, then it is proper for the court to dismiss the complaint with prejudice because any attempts to exhaust would be futile. *Berry v. Kerik*, 366 F.3d 85, 86 (2d Cir. 2004).

Here, the documents attached to Plaintiff's Complaint suggest that, as Defendants argue, Plaintiff has not fully exhausted his available administrative remedies prior to bringing this action. We note that Plaintiff has since been transferred from FCI Ray Brook to another institution, Allenwood Medium Federal Correctional Institute, and thus no longer has access to administrative remedies related to the claims in his Complaint available to him. Accordingly, we could recommend dismissal of this action with prejudice without further consideration of the merits. However, we note that under the applicable standard of review, we are bound to take all factual allegations in the Complaint as true. Notwithstanding the Exhibits attached to his Complaint, Plaintiff states in his Complaint that he, in effect, got the run-around from the Defendants when he attempted to exhaust. There are certain exceptions recognized in this Circuit as excusing a prisoner's failure to fully exhaust. However, because Plaintiff does not elaborate on such claims, we are unable at this stage to properly assess whether he fully exhausted his available administrative remedies or whether the Defendants should be estopped from asserting the affirmative defense.

Nevertheless, in accordance with the PLRA, if the underlying claim has no merit, this Court may dismiss it with prejudice, despite the failure to exhaust. 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may

dismiss the underlying claim without first requiring the exhaustion of administrative remedies."). Because Defendants have moved in the alternative for dismissal due to Plaintiff's failure to state a claim, we can continue with our analysis of the merits of Plaintiff's claims.

### D.  Plaintiff's Claims

Plaintiff's Complaint, read liberally, asserts an Eighth Amendment claim with regard to the conditions of his confinement in a six-person cell at FCI Ray Brook.

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297–99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630–31 (2d Cir. 1996)).  In *Phelps v. Kapnolas*, the Second Circuit set out in detail the requirements that a plaintiff must prove in order to make out a claim that the conditions of his confinement violated the Eighth Amendment:

> Under the Eighth Amendment, States must not deprive prisoners of their "basic human needs— e.g., food, clothing, shelter, medical care, and reasonable safety." *Helling* [*v. McKinney*], 509 U.S. [25,] 32 [(1993)] (citation and internal quotation marks omitted).  Nor may prison officials expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health." *Id.* at 35. Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency. *Id.* at 35–36; *Rhodes* [*v. Chapman*], 452 U.S. 337[,] 347 [(1981)].
>
> Concerning the "subjective" requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer* [*v. Brennan*], 511 U.S. [825,] 837 [(1994)].

*Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002).

"Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).  In determining whether a condition of confinement was objectively serious, courts consider the length of the deprivation and the potential for harm.

Here, the entirety of Plaintiff's claims can be dismissed outright for failing to meet the objective prong of the Eighth Amendment.

First, Plaintiff claims that his imprisonment in a six-person cell affords him only twenty-nine square feet of living space.  Compl. at Facts ¶ 1.  This exact issue has been previously addressed in this District:

> [T]he conditions at Ray Brook do not deny inmates of the minimal measure of life's necessities.  Concededly, Ray Brook's four person cells only allow approximately-thirty square feet of living space which is undesirable at best.  However, a lack of living space in of itself does not violate the Eighth Amendment. In fact, the Supreme Court found no violation of the Eighth Amendment in *Rhodes v. Chapman* where inmates challenged confinement conditions that housed prisoners in "doubled-up" cells.  These cells afforded each inmate with only thirty-one square feet, but the facility otherwise had adequate living facilities.  The Court held that in such circumstances "double-celling" does not lead to deprivations of food, medical care, or sanitation, nor does it lead to excessive violence or create deplorable conditions of confinement.  *Rhodes*, 452 U.S. at 346.

*Chapdelaine v. Keller*, 1998 WL 357350, at *5 (N.D.N.Y. Apr. 16, 1998).

The twenty-nine square feet that Plaintiff complains about having in his six-person cell is fundamentally the same complaint confronted by the Supreme Court in *Rhodes* and by the Northern District in *Chapdelaine*.  Accordingly, this Court refuses to hold that twenty-nine square feet of living space in a federal prison cell violates the Constitution when thirty or thirty-one square feet would not.  Instead, the Court notes that the Constitution does not mandate comfortable prisons and, "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that

criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. at 347. Thus, we agree that a "lack of living space in of itself does not violate the Eighth Amendment." *Chapdelaine v. Keller*, 1998 WL 357350, at *5.

Second, Plaintiff complains that "[t]here is no privacy in the cell at any time even when using the toilet[.]" Compl. at p. 7, ¶ 10.  The lack of privacy in a prison cell, however, is not sufficiently serious to meet the objective prong of the Eighth Amendment.  *See Bolton v. Goord*, 992 F. Supp. 604, 627 (S.D.N.Y. 1998) (noting that using the toilet in front of cellmates, "while undoubtedly embarrassing and uncomfortable, does not approach the standard of inhumane conditions that violate the Eighth Amendment"); *Chapdelaine v. Keller*, 1998 WL 357350, at *5 ("Although[] the court sympathizes with plaintiff's understandable desire for private sanitary facilities . . . [this] complaint[] do[es] not equal a violation of a constitutional right.").

Third, Plaintiff's allegation that his bed is uncomfortable fails to state an Eighth Amendment violation.  *See Smith v. Woods*, 2006 WL 1133247, at *13 (N.D.N.Y. Apr. 24, 2006) ("Simply stated, the Eighth Amendment does not mandate 'comfortable' bunk beds.").  Plaintiff's only complaint that his bed is uncomfortable and too short is not enough to constitute a violation.  *See Gowins v. Greiner*, 2003 WL 943239, at *3 (S.D.N.Y. Mar. 10, 2003) ("[I]t cannot be inferred that a too-short bed is a seriously dangerous condition . . . [plaintiff] complained only that it was uncomfortable, not dangerous.").

Fourth, Plaintiff's claims that "mixing different races and gang members" in his overcrowded cell "create[s] problems" are insufficient to state an Eighth Amendment claim.  *See Waldo v. Goord*, 1998 WL 713809, at *2-3 (N.D.N.Y. Oct. 1, 1998) ("Plaintiff alleges that overcrowding led to an increase in tension and danger . . . . [but he] does not claim, however, that he was deprived of any

basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding.") (further citing *Bolton v. Goord*, 992 F. Supp. at 627, for the proposition that an inmate's claim that double-celling and fear of assault was rejected as insufficient). In situations where an inmate's safety is at issue, the inmate must allege that "he or she was incarcerated under conditions posing a substantial risk of serious harm." *Chalif v. Spitzer*, 2008 WL 1848650, at *8 (N.D.N.Y. Apr. 23, 2008) (citing, *inter alia*, *Farmer v. Brennan*, 511 U.S. at 834 & *Matthews v. Armitage*, 36 F. Supp. 2d 121, 124-25 (N.D.N.Y. 1999)). Plaintiff has failed to allege that he was physically assaulted or even threatened by his cellmates. Instead, he speaks in general overtones about the problems of commingling different races and gangs in prison. This is insufficient to state a claim upon which relief can be granted. *See*, *e.g.*, *Chalif v. Spitzer*, 2008 WL 1848650 at *9; *Jones v. Goord*, 435 F. Supp. 2d 221, 244 (S.D.N.Y. 2006) ("Because plaintiffs present no evidence and make no claims regarding what the actual risk of assault is in a double cell, plaintiffs are unable to make any argument that the actual risk is 'substantial' enough to make out a constitutional violation").

Fifth, Plaintiff complains that the bunk beds in his cell do not have ladders to gain access to the top bunk. Compl. at p. 7, ¶¶ 8-9. In *Jenkins v. Fischer*, 2010 WL 6230517 (Sept. 8, 2010), this Court acknowledged that allegations of unsafe living conditions by virtue of having ladderless bunk beds could trigger the Eighth Amendment. 2010 WL 6230517, at *8-10, *Report and Recommendation adopted by* 2011 WL 978762 (N.D.N.Y. Mar. 17, 2011) (Sharpe, J.). In that case, we noted that "while it is clearly established that prisoners have the right to detention in reasonably safe prisons, it is not clearly established that the absence of ladders in double-bunked cells violated such rights nor that a reasonable officer would believe that his actions violate clearly established

constitutional rights" thereby entitling the defendants in that case to qualified immunity. *Id*. at *7. For the benefit of the reviewing court, we proceeded in our analysis of the merits of the Eighth Amendment claim and found that, though an Eighth Amendment claim may have been stated by the plaintiff, even where there was a lack of significant injury, based upon the evidence presented, the encroachment of the plaintiff's safety was reasonably related to a legitimate and rational, non-penalogical reason regarding institutional security. *Id*. at *10.

In the instant case, we do not have the benefit of the full record that was provided in *Jenkins*. Nevertheless, a review of the Complaint reveals, as the Defendants state, "skeletal" allegations,[2] which, most importantly, fail to attribute any personal involvement to any particular Defendant such that any Defendant could be said to have "know[n] of and disregard[ed] can excessive risk to inmate health or safety," *Farmer v. Brennan*, 511 U.S. at 837, sufficient to meet the subjective requirement of the Eighth Amendment.  Plaintiff only states that he reported his fall to an unnamed unit guard. Compl. at p. 7, ¶ 9.  Thus, even if we were to find that a plausible Eighth Amendment claim has been stated due to ladderless bunks, Plaintiff's claim fails to allege the personal involvement of any Defendant in any purported constitutional violation.

Sixth, Plaintiff's complaints of inadequate ventilation in his prison cell likewise fail to state a constitutional claim.  Plaintiff provides no details other than the conclusory allegations that "during the winter the cell is cold and summer months extremely hot and quite difficult to breathe." Compl. at p. 9, ¶ 21.  This is insufficient to state an Eighth Amendment conditions of confinement claim.  *See*, *e.g.*, *Bell v. Artuz*, 1999 WL 253607, at *3-4 (S.D.N.Y. Apr. 29, 1999) (noting that no

---

[2] Plaintiff merely states that while climbing from a chair to a locker, he might knock someone's property to the floor, possibly igniting an altercation, and that on one occasion he fell back onto the chair while climbing to the top bunk. He fails to provide the Court with the date when he fell, the circumstances surrounding it, or any injury he suffered as a result of the fall.  Compl. at p. 7, ¶¶ 8-9.

Eighth Amendment claim is implicated where prisoner alleges poor ventilation, even alongside complaints of no pillows, a lack of space in double-occupancy cell, asbestos on catwalk behind cells, no bacterial soap, and insufficient lighting); *Borges v. McGinnis*, 2007 WL 1232227, at *4–6 (W.D.N.Y. Apr. 26, 2007) (find that an inmate given only a paper gown, slippers, a thin mattress, and no blanket, while confined for three days in a room with an open window that reduced the temperature to approximately fifty degrees, failed to meet the objective element of an Eighth Amendment violation).  Similarly, Plaintiff's complaints of excessive noise fail to state a claim.  *See Phillips v. Roy*, 2011 WL 3847265, at *15 (N.D.N.Y. Aug. 29, 2011) (finding an inmate's complaints of "noise which interrupted his sleep[] fails to meet the objective element of an Eighth Amendment inquiry.  Although undoubtedly annoying, such conditions do not evince a serious risk of harm and do not rise to the level of an Eighth Amendment violation").

Lastly, Plaintiff complains that his cell is unsanitary because of the placement of two toilets in the cell and urine surrounding the toilets which is not cleaned up.  Compl. at p. 8, ¶¶ 18-20. Again, to meet the objective prong of the Eighth Amendment, the Plaintiff must be deprived of "the minimal civilized measure of life's necessities."  *Farmer v. Brennan*, 511 U.S. at 837.  The unsanitary conditions caused by having a toilet in the cell do not give rise to a valid Constitutional conditions of confinement claim.  *See Jones v. Goord*, 435 F. Supp. 2d at 237; *see also Grant v. Demarco*, 2011 WL 6097740, at *1 & 4 (E.D.N.Y. Dec. 6, 2011) (holding that a plaintiff's complaint of unsafe and unsanitary living conditions, which included "backed up toilets," did not state claims that "rise[] to the level of a serious deprivation of human need") (citing *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 1985)).  Further, Plaintiff does not state the extent or duration of the unsanitary conditions he complains about.  A constitutional claim "will not lie for prison

conditions that are merely unpleasant[.]" *Ortiz v. Dep't of Corr. of the City of New York*, 2011 WL 2638137, at *6 (S.D.N.Y. Apr. 29, 2011).  Thus, while the Second Circuit has found that a claim that an inmate's cell "filled with human feces, urine, and sewage water" for several consecutive days states an Eighth Amendment claim of unsanitary conditions, *Gaston v. Coughlin*, 249 F.3d 156, 166-66 (2d Cir. 2001), without any indication here of the exact extent or duration of Plaintiff's exposure to unsanitary conditions, besides the description of "urine . . . on the floor and sometimes . . . on the toilet," Plaintiff fails to state a claim upon which relief can be given.

Even taken in conjunction, we find that Plaintiff's allegations do not give rise to an Eighth Amendment level of deprivation.  As noted above, the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. at 349, but rather prohibits inhumane ones, *Farmer v. Brennan*, 511 U.S. at 832.  "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. at 347.  Absent from Plaintiff's Complaint are specific allegations that he was deprived of basic needs, such as food or clothing, or that he was a victim of violence.  Rather, Plaintiff does not assert any injury beyond mere discomfort.  Such allegations are plainly insufficient to support an Eighth Amendment claim, and as such, Plaintiff's Complaint should be **dismissed** for failure to state a claim upon which relief can be granted.

### E. Qualified Immunity and Personal Involvement

Defendants raise in their Motion that they are entitled to qualified immunity.  With regard to the claim of ladderless bunks, we find, as we previously did in *Jenkins*, that "while it is clearly established that prisoners have the right to detention in reasonably safe prisons, it is not clearly

established that the absence of ladders in double-bunked cells violated such rights nor that a reasonable officer would believe that his actions violate clearly established constitutional rights." *Jenkins v. v. Fischer*, 2010 WL 6230517, at *7.  Thus, to the extent Plaintiff seeks relief pursuant to the Eighth Amendment for the ladderless bunks, we recommend that, notwithstanding his failure to attribute personal involvement to any Defendant, all Defendants would be entitled to qualified immunity.

As for the other claims raised in the Complaint, in light of the above analysis wherein this Court has assessed that no constitutional violations occurred, it is unnecessary for us to consider the affirmative defense of qualified immunity put forth by Defendants. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").  For the same reason, we need not address Defendants' alternative argument that all of Plaintiff's claims be dismissed because Plaintiff failed to allege that they were personally involved in the constitutional violations. *See*, *e.g.*, *Barnes v. Craft*, 2008 WL 3884369, at *13 (N.D.N.Y. Aug. 18, 2008).  We note, however, that Plaintiff appears to have not served Defendants Sepanek and Harley Lappin.  *See* Dkt. No. 11. Because we find that Plaintiff failed to allege any constitutional violation, Defendants Sepanek and Lappin should be **dismissed** from this action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) & (iii) for failure to state a claim upon which relief may be granted and for lack of jurisdiction.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 25) be **granted** and Plaintiff's entire Complaint (Dkt. No. 1) be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   January 19, 2012
        Albany, New York

_____
Randolph F. Treece
U.S. Magistrate Judge

*-17-*