# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| ELLIS WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| v. | ) | 9:11-CV-287 (DNH/DJS) |
| | ) | |
| DEBORAH G. SCHULT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____ )

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT</u>

JOSEPH H. HUNT
Assistant Attorney General, Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch, Civil Division

ANDREA W. MCCARTHY
Senior Trial Counsel, Torts Branch, Civil Division

JAMES G. BARTOLOTTO
JEAN MARIE CUNNINGHAM
Senior Trial Attorneys, Civil Division
KELLY HEIDRICH
Trial Attorney, Civil Division
United States Department of Justice
Ben Franklin Station, PO Box 7146
Washington, DC 20044
T: (202) 616-4371
F: (202) 616-4314
E-mail: Kelly.Heidrich@usdoj.gov
*Attorneys for the Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

BACKGROUND ........................................................................................................... 1

STANDARD OF REVIEW ........................................................................................... 3

ARGUMENT ................................................................................................................. 4

I.   Plaintiff's Claim Arises in a New Context. ......................................................... 5

II.  Special Factors Counsel Hesitation to Extending a *Bivens* Remedy to Plaintiff's Claim. ................................................................................................................... 9

CONCLUSION ............................................................................................................. 17

## **TABLE OF AUTHORITIES**

<u>Cases</u>

*Alexander v. Ortiz*,
   No. 15-6981, 2018 WL 1399302 (D.N.J. Mar. 20, 2018) ........................................ 9, 14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................................... 3

*Andrews v. Miner*,
   301 F.Supp. 3d 1128 (N.D. Ala. 2017) ........................................................ 12

*Arar v. Ashcroft*,
   585 F.3d 559 (2d Cir. 2009) ...................................................................... 6, 10

*Atkinson v. Broe*,
   No. 15-cv-386-wmc, 2019 WL 231754 (W.D. Wis. Jan. 16, 2019) ........................ 11

*Bell v. Wolfish*,
   441 U.S. 520 (1979) .................................................................................... 15

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) .................................................................................... 1, 5

*Brecht v. Abrahamson*,
   507 U.S. 619 (1993) .................................................................................... 8

*Bush v. Lucas*,
   462 U.S. 367 (1983) .................................................................................... 12, 13

*Carlson v. Green*,
   446 U.S. 14 (1980) .................................................................................. passim

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................... 3

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988) .................................................................................... 4

*Corr. Servs. Corp. v. Malesko*,
   534 U.S. 61 (2001) .......................................................................... 11, 13, 16, 17

*Davis v. Passman,*
   442 U.S. 228 (1979) ............................................................................................ 5

*DiLaura v. Power Auth. of State of New York,*
   982 F.2d 73 (2d Cir. 1992) ................................................................................. 4

*Farmer v. Brennan,*
   511 U.S. 825 (1994) ............................................................................................ 8

*Gonzalez v. Hasty,*
   269 F. Supp. 3d 45 (E.D.N.Y. 2017) ........................................................ passim

*Harris v. Dunbar,*
   No. 2:17-CV-536, 2018 WL 3574736 (S.D. Ind. July 25, 2018) .................... 14

*Harris v. Key Bank Nat'l Ass'n,*
   193 F. Supp. 2d 707 (W.D.N.Y. Jan. 15, 2002),
   *aff'd* , 51 Fed. Appx. 346 (2d Cir. 2002) ........................................................ 4

*Hernandez v. United States,*
   757 F.3d 249 (5th Cir. 2014) .............................................................................. 7

*Hutto v. Finney,*
   437 U.S. 678 (1978) .......................................................................................... 12

*Jackson v. Goord,*
   664 F. Supp. 2d 307 (S.D.N.Y. 2009) ............................................................... 4

*Jones v. N.C. Prisoner's Union,*
   433 U.S. 119 (1977) .......................................................................................... 16

*Jones v. Tenn. Valley Auth.,*
   948 F.2d 258 (6th Cir. 1991) ............................................................................ 10

*Kirtman v. Helbig,*
   No. 4:16-CV-2839, 2018 WL 3611344 (D.S.C. July 27, 2018) ..................... 14

*Left Fork Min. Co. v. Hooker,*
   775 F.3d 768 (6th Cir. 2014) ............................................................................ 10

*Matter of Stegall,*
   865 F.2d 140 (7th Cir. 1989) .............................................................................. 8

*McCarthy v. Nw. Airlines, Inc.*,
   56 F.3d 313 (1st Cir. 1995) ........................................................................ 3

*Muhammad v. Gehrke*,
   No. 2:15-cv-00334-WTL-MJD, 2018 WL 1334936 (S.D. Ind. Mar. 15, 2018) .......... 11

*Overton v. Barzzetta*,
   539 U.S. 126 (2003) .................................................................................. 16

*Randolph v. FCI Allenwood (Med)*, No. 1:17-CV-786,
   2018 WL 2276246 (M.D. Pa. Apr. 24, 2018) ................................................ 15

*Rhodes v. Chapman*,
   452 U.S. 337 (1981) .................................................................................. 17

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
   99 F. Supp. 3d 388 (W.D.N.Y. 2015) ............................................................ 4

*Sanford v. Bruno*,
   No. 17-CV-5132, 2018 WL 2198759 (E.D.N.Y. May 14, 2018) ................................ 7

*Schwarz v. Meinberg*,
   No. 17-5529 & No. 17-56216, 2019 WL 581575 (9th Cir. Feb. 13, 2019) .......... 7, 8, 11

*Schweiker v. Chilicky*,
   487 U.S. 412 (1988) .............................................................................. 9, 11

*Simmat v. BOP*,
   413 F.3d 1225 (10th Cir. 2005) .................................................................. 12

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004) .......................................................................... 3

*Turner v. Safley*,
   482 U.S. 78 (1987) .................................................................................. 15

*United States v. Sanchez*,
   35 F.3d 673 (2d Cir. 1994), *cert. denied,* 514 U.S. 1038 (1995) .............................. 3, 4

*United States v. Stanley*,
   483 U.S. 669 (1987) .............................................................................. 9, 12

*Vanderklok v. United States*,
   868 F.3d 189 (3d Cir. 2017) ........................................................................ 7

iv

*Walker v. Schult,*
    717 F.3d 119 (2d Cir. 2013) ........................................................................... 1

*Walker v. Schult,*
    No. 9:11-CV-0287-LEK/DJA, 2016 WL 4203536 (N.D.N.Y. Aug. 9, 2016)............ 1, 2

*Warner Bros., Inc. v. American Broad. Cos., Inc.,*
    720 F.2d 231 (2d Cir. 1983) ........................................................................... 3

*Wilkie v. Robbins,*
    551 U.S. 537 (2007) ................................................................. 9, 10, 11, 13

*Wright v. Smith,*
    21 F.3d 496 (2d Cir. 1994) ........................................................................... 16

*Zavala v. Rios,*
    721 Fed. Appx. 720 (9th Cir. 2018) ........................................................... 12

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) ...................................................................... passim

Statutes

42 U.S.C. § 1997e ......................................................................... 2, 12, 13, 14

Pub. L. No. 113-4 ........................................................................... 14

Rules

Federal Rule of Civil Procedure 56 ............................................................ 1, 3

Pursuant to Federal Rule of Civil Procedure 56, Defendants Deborah G. Schult, Russell Perdue, and Jackii Sepanek hereby move for summary judgment as a matter of law. Under the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) and subsequent case law, plaintiff's claim cannot proceed because it arises in a context different from any *Bivens* claim recognized by the Supreme Court and special factors counsel hesitation in implying a new constitutional tort remedy here.

## BACKGROUND

Plaintiff, a former federal inmate at FCI Ray Brook, sues former Wardens Schult and Perdue, and former Correctional Counselor Sepanek in their individual capacities under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff's claim arises out of the two and a half years he occupied Cell 127 in the Mohawk B unit at FCI Ray Brook, during which, he alleges, he was subjected to overcrowded conditions that led to a "lack of sanitation, adequate space, and safety." *Walker v. Schult*, No. 9:11-CV-0287-LEK/DJA, 2016 WL 4203536, at *14 (N.D.N.Y. Aug. 9, 2016).

Plaintiff commenced this case *pro se* on March 11, 2007. He alleges the individual defendants violated his Eighth Amendment rights by their deliberate indifference to his unconstitutional cell conditions. *See* Dkt. No. 1, Compl. ¶¶ 13, 21, 28. The Court granted Defendants' motion to dismiss for failure to state a claim. Dkt. Nos. 30, 33. Plaintiff appealed to the Second Circuit, which reversed and remanded, reasoning that the complaint, broadly read, adequately alleged both unconstitutional cell conditions and deliberate indifference. *Walker v. Schult*, 717 F.3d 119, 129-30 (2d Cir. 2013). On remand, the parties engaged in limited discovery to determine whether Plaintiff had

1

exhausted administrative remedies before filing suit, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e. Defendants then moved for partial summary judgment, arguing Plaintiff failed to raise a number of the allegedly unconstitutional elements of his cell conditions in his administrative remedies. Dkt. No. 67-1, at 2. Magistrate Judge Treece's Report and Recommendation found Plaintiff had adequately exhausted, because his remedy forms contained sufficient material to "put the prison officials on notice" of the constitutional claim generally, if not of the "discrete allegations" upon which it was based. Dkt. No. 72, at 9, 10. The Court, adopting the Report and Recommendation, denied Defendants' motion for partial summary judgment on December 22, 2014. Dkt. No. 77.

After discovery, Defendants moved for summary judgment. The Court denied the motion on August 8, 2016. *Walker v. Schult*, 2016 WL 4203536, at *1. The Court stated material factual issues remained, because it was "possible that the conditions of Plaintiff's cell combine to constitute an Eighth Amendment violation in regards to lack of proper sanitation, adequate space, and safety." *Id.* at *14. The Court further held that disputes remained regarding the nature of Plaintiff's complaints to the individual defendants and whether Plaintiff had adequately notified them of the allegedly unconstitutional cell conditions such that a jury could find deliberate indifference on their part. *Id.* Trial is now set for May 13, 2019. In light of *Abbasi*, which the Supreme Court decided after this Court denied summary judgment, the Defendants again move for summary judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires a court to grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Under Rule 56, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (original emphasis). Instead, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.* at 248. Further, summary judgment is required where, "after adequate time for discovery," the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In such a case, summary judgment "allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995).

The District Court has broad discretion to entertain successive summary judgment motions, *see Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004), as well as the discretion to reconsider prior summary judgment decisions. *Warner Bros., Inc. v. American Broad. Cos., Inc.,* 720 F.2d 231, 245 (2d Cir. 1983). In general, a court "will only reconsider a prior decision in the same case if there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or to prevent manifest injustice." *United States v. Sanchez,* 35 F.3d 673, 677 (2d Cir. 1994), *cert.*

*denied,* 514 U.S. 1038 (1995); *see also Harris v. Key Bank Nat'l Ass'n*, 193 F. Supp. 2d

707, 710 (W.D.N.Y. Jan. 15, 2002), *aff'd*, 51 Fed. Appx. 346 (2d Cir. 2002).

Consequently, a party may renew its motion for summary judgment if there has been a

change in the relevant law, or if new evidence comes to light that was not previously

available. *See United States v. Sanchez,* 35 F.3d 673, 677 (2d Cir. 1994), *cert. denied,*

514 U.S. 1038 (1995); *Jackson v. Goord*, 664 F. Supp. 2d 307, 313-14 (S.D.N.Y. 2009).

The scope of a renewed motion should be limited to issues relating to the new

material. *See DiLaura v. Power Auth. of State of New York,* 982 F.2d 73, 76 (2d Cir.

1992) ("The law of the case doctrine 'posits that when a court decides upon a rule of law,

that decision should continue to govern the same issues in subsequent stages in the same

case.'") (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816 (1988)).

A subsequent motion is particularly justified when it is based upon an intervening change

in the controlling law. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 99 F. Supp.

3d 388, 391 (W.D.N.Y. 2015) (second motion for summary judgment justified when

subsequent Second Circuit decision changed applicable legal standard from strict liability

to negligence).

## ARGUMENT

Defendants file this Renewed Motion for Summary Judgment because the

Supreme Court's recent decision in *Ziglar v. Abbasi,* 137 S. Ct. 1843 (2017)

fundamentally altered the legal underpinning of Plaintiff's claim. *Abbasi* eliminated any

presumption that a generalized conditions of confinement claim—like Plaintiff's here—

can proceed as an implied cause of action under *Bivens*. District and appellate court

decisions following *Abbasi* have specifically rejected proposed Eighth Amendment

4

*Bivens* claims arising outside of the context of deliberate indifference to serious medical needs. Where, as here, a claim arises in a new context, courts must consider whether special factors counsel hesitation in implying a new constitutional tort remedy. *See Abbasi*, 137 S. Ct. at 1856. Special factors do weigh against judicial recognition of a *Bivens* action based on alleged cell overcrowding and overall conditions of confinement. For this reason, Plaintiff's Eighth Amendment claim cannot go forward.

## I.    Plaintiff's Claim Arises in a New Context.

In *Abbasi*, courts were instructed to consider anew—and with caution—any attempt to extend *Bivens* beyond the narrow parameters previously established by the Supreme Court. 137 S. Ct. at 1860. Accordingly, when a plaintiff invokes *Bivens* as the basis for a cause of action, the "first question a court must ask" is whether "the case presents a new *Bivens* context." *Id.* at 1859, 1864. Any claim that does not lie within the narrow boundaries of established claims explicitly recognized by the Court presents a new context. *Id.* at 1859, 1860. The Court has recognized individual constitutional damages claims in only three cases: *Bivens* itself, involving a Fourth Amendment claim against law enforcement officers for "handcuffing a man in his own home without a warrant," 403 U.S. 388 (1971), *Davis v. Passman,* 442 U.S. 228 (1979), involving a Fifth Amendment gender discrimination claim "against a congressman for firing his female secretary," and *Carlson v. Green*, 446 U.S. 14 (1980), involving an Eighth Amendment claim against prison officials who failed to provide medical care to an inmate. *See Abbasi*, 137 S. Ct. at 1860. Any claim that differs "in a meaningful way" from these three cases presents a new context. *Id.* at 1859, 1860.

*Abbasi* made clear that the limited nature of the established *Bivens* realm is the logical culmination of its prior jurisprudence, in which it has "consistently refused to extend *Bivens* to any new context or new category of defendants" in the almost forty years since *Carlson*. *Abbasi,* 137 S. Ct. at 1857 (citing cases); *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (en banc) ("Since *Carlson* in 1980, the Supreme Court has declined to extend the *Bivens* remedy in any new direction at all."). The Court explained that its reluctance to expand *Bivens* is rooted in fundamental constitutional concerns, as "[i]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Abbasi,* 137 S. Ct. at 1857. The Court's discomfort with judicial creation of individual-capacity claims was significant enough to prompt both its observation that "the analysis in the Court's three *Bivens* cases might have been different if they were decided today," and its explicit instruction that the expansion of *Bivens* is now a "disfavored judicial activity." *Id*. at 1856-57.

Plaintiff's conditions of confinement claim arises in a new context. "Although the Supreme Court recognized a *Bivens* remedy under the Eighth Amendment in *Carlson*," it does not automatically follow "that all Eighth Amendment claims have a *Bivens* remedy." *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 64 (E.D.N.Y. 2017). *Abbasi* emphasized that, going forward, each new conditions of confinement claim should be evaluated for novelty on its specific facts. *Abbasi*, 137 S. Ct. at 1859, 1864 (citing *Carlson,* 446 U.S. at 19). And because "even a modest extension of *Bivens* is still an extension[,]" any claim

arising in a new context requires a special factors analysis. *Id.* It matters not that a court allowed such *Bivens* claims to proceed in the past. *Id.* at 1864.

This means that even if "a Court of Appeals had previously found a *Bivens* remedy, that court or a district court must reconsider whether one is available." *Sanford v. Bruno*, No. 17-CV-5132, 2018 WL 2198759, at *4 (E.D.N.Y. May 14, 2018); *Vanderklok v. United States,* 868 F.3d 189, 199 (3d Cir. 2017) ("Our past pronouncements are thus not controlling in the specific circumstances now at issue. It is not enough to argue … that [these] claims have been permitted under *Bivens* before. We must look at the issue anew in this particular context, …); *see also Schwarz v. Meinberg*, No. 17-5529 & No. 17-56216, 2019 WL 581575, at *1-2 (9th Cir. Feb. 13, 2019), (rejecting Eighth Amendment claim based on "unsanitary cell conditions" and noting that while "there is some similarity" with previously recognized *Bivens* claim, it "arises within a new context" and does not "fall within the claims authorized by the Supreme Court"); *Hernandez v. United States*, 757 F.3d 249, 272 (5th Cir. 2014) ("Courts do not extend *Bivens* remedies amendment-by-amendment."); *Gonzalez*, 269 F. Supp. 3d at 58 (*Abbasi* "has given priority to the need to consider the availability of *Bivens* relief, even where the Circuit had previously assumed the availability of a *Bivens* remedy.").

While the Second Circuit previously recognized an individual damages remedy for Eighth Amendment claims alleging unconstitutional conditions of confinement, *Abbasi* eliminated the presumption that a *Bivens* cause of action is available going forward. *See Abbasi,* 137 S. Ct. at 1844 (*Bivens, Davis,* and *Carlson* "represent the *only* instances in which the Court has approved of an implied damages remedy under the Constitution itself.").

Furthermore, *Abbasi*'s exclusion of *Farmer v. Brennan*, 511 U.S. 825 (1994), from its list of three core *Bivens* cases makes clear that the Supreme Court has not recognized an Eighth Amendment conditions of confinement claim. While *Farmer* established the standard for determining whether a prison official's conduct constitutes deliberate indifference, the Supreme Court never addressed the question of whether a *Bivens* remedy for such a claim should be implied. "A point of law merely assumed in an opinion, not discussed, is not authoritative." *Matter of Stegall*, 865 F.2d 140, 142 (7th Cir. 1989)*; see also Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) (when the Supreme Court's previous decisions have assumed the answer to a disputed point of law without squarely addressing the question, it is "free to address the issue on the merits" in a later case); *Gonzalez,* 269 F. Supp. 3d at 63 ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue.").

Moreover, *Abbasi* specifically addressed the availability of inmate claims falling outside of the *Carlson* framework, and held that *Carlson*'s extension of a *Bivens* remedy was limited to claims of deliberate indifference to serious medical needs. The Supreme Court recognized that while *Abbasi* and *Carlson* both involved claims of prisoner mistreatment, *Abbasi*'s claim for harsh conditions of confinement differed "in a meaningful way" from *Carlson*'s denial of medical care claim. *See Abbasi,* 137 S. Ct. at 1864-65. Likewise, Plaintiff's claim here. Plaintiff's assertion that overcrowding exacerbated various factors which combined to create generally unconstitutional conditions in Cell 127 bears little resemblance to the medical claim addressed in *Carlson*. Accordingly, permitting Plaintiff's claim would constitute a significant expansion of the core *Bivens* jurisprudence. *See Schwarz*, 2019 WL 581575, at *1. Therefore, the Court

must consider whether special factors counsel hesitation in recognizing this new remedy. *See Abbasi*, 137 S. Ct. at 1860.

## II.   Special Factors Counsel Hesitation to Extending a *Bivens* Remedy to Plaintiff's Claim.

*Abbasi* reaffirmed that novel *Bivens* claims should be rejected if "special factors" counsel against creating such a cause of action. The special factors analysis involves a two-step inquiry, first articulated in *Wilkie v. Robbins*, 551 U.S. 537 (2007). The first prong asks whether there is "any alternative, existing process for protecting" a plaintiff's interests. *Wilkie,* 551 U.S. at 550; *see also Schweiker v. Chilicky,* 487 U.S. 412, 425 (1988). If an alternative process is available, this indicates that Congress "expected the judiciary to stay its *Bivens* hand" and not infer an additional damages remedy. *Wilkie*, 551 U.S. at 554; *see also Abbasi*, 137 S. Ct. at 1858. It is immaterial whether the existing scheme remedies the precise harm claimed by the potential *Bivens* plaintiff; "when alternative methods of relief are available, a *Bivens* remedy usually is not." *Abbasi,* 137 S. Ct. at 1863; *see also United States v. Stanley*, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [plaintiff]… an 'adequate' federal remedy for his injuries.").

The second prong of the *Wilkie* test asks whether there are any additional "special factors counselling hesitation." *Wilkie*, 551 U.S. at 550. Even if there is no alternative process available to a plaintiff, "[t]he lack of an alternative remedy for damages does not necessarily mean the Court should extend *Bivens*…. The Court must still 'make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed ... to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Alexander v. Ortiz*, No. 15-6981, 2018 WL 1399302, at *7

9

(D.N.J. Mar. 20, 2018) (quoting *Wilkie*, 551 U.S. at 550); *see also Left Fork Min. Co. v. Hooker*, 775 F.3d 768, 776 (6th Cir. 2014) ("[T]he Supreme Court has made it clear that …even in the absence of an alternative, 'a *Bivens* remedy is a subject of judgment…'") (quoting *Wilkie,* 551 U.S. at 550).

The second prong of the *Wilkie* analysis thus "concentrate[s] on whether the judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58; *see also Jones v. Tenn. Valley Auth.,* 948 F.2d 258, 263-64 (6th Cir. 1991) ("[C]ourts must give appropriate deference to indications that congressional inaction has not been inadvertent and should not create *Bivens* remedies when the design of a government program suggests that Congress has provided what it considers to be adequate remedies for constitutional violations."). Consequently, the "threshold" for whether special factors "counsel[] hesitation in recognizing a new *Bivens* context" is "remarkably low." *Arar,* 585 F.3d at 574.

In keeping with the "remarkably low" special factors threshold that forestalls *Bivens* expansion, *Abbasi* placed no restrictions on the type of factors that may prompt a court to hesitate before implying a remedy "in the absence of affirmative action by Congress." *Abbasi*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). However, the Court did offer some guidance by identifying certain factors that new context cases frequently present, such as separation of powers concerns and the various systemic governmental concerns presented by a potential claim. *Abbasi*, 137 S. Ct. at 1858. Because these factors are inherent to inmate claims outside of the medical context, numerous district and appellate courts have considered, and rejected, such claims.

10

Plaintiff's generalized Eighth Amendment overcrowding claim should be rejected as well. First, Plaintiff had access to alternative remedial processes, and "[i]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Abbasi,* 137 S. Ct. at 1858. The Supreme Court has defined "alternative remedial structure" broadly, to include both judicial remedies and administrative grievance procedures. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) ("Inmates in respondent's position also have full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program."). The "remedy" need not be a cause of action at all, let alone a cause of action for damages; it may simply consist of a "process," *Wilkie*, 551 U.S. at 550, or "safeguard," *Chilicky*, 487 U.S. at 425. Nor does it matter whether the alternative process offers "complete relief for the plaintiff," or the particular relief the plaintiff seeks. *Id.* So long as the existing remedial structure provides an "avenue for some redress," a *Bivens* remedy is not available. *Malesko*, 534 U.S. at 69; *see also Schwarz*, 2019 WL 581575, at *2; *Gonzalez*, 269 F. Supp. 3d at 60 (availability of BOP administrative remedy program is a "special factor[] counseling against the creation of a new claim").

There is a wealth of recent precedent declining to extend a *Bivens* remedy to prisoners on the grounds that they have access to alternative remedial processes. *See, e.g., Cannnier v. Skipper-Scott*, 1:18-cv-2383- LGS, 20419 WL 764795, at *5 (S.D.N.Y. Feb. 20, 2019); *Taylor v. Lockett, Atkinson v. Broe*, No. 15-cv-386-wmc, 2019 WL 231754, at 3-4 (W.D. Wis. Jan. 16, 2019); *Muhammad v. Gehrke*, No. 2:15-cv-00334-WTL-MJD, 2018 WL 1334936, at *4 (S.D. Ind. Mar. 15, 2018); *Gonzalez*, 269 F. Supp. 3d at 60;

11

*Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134 (N.D. Ala. 2017). The BOP's

Administrative Remedy Program is not only available to all federal inmates, it is a

Congressionally-mandated prerequisite to the filing of any inmate's prison-related civil

rights lawsuit. *See* 42 U.S.C. § 1997e. And Plaintiff did go through the administrative

remedy process before filing this action. *See* Defendants' Statement of Material Facts Not

in Dispute (SOMF), ¶¶ 1-10. Indeed, the Court ruled that his remedy forms sufficed to

meet the PLRA's exhaustion requirement for the overcrowding and conditions of

confinement claim. *See* Dkt. No. 77. That Plaintiff was dissatisfied with the Bureau of

Prisons' final response is immaterial; an unfavorable result in the alternative process does

not justify a plaintiff's request for *Bivens* expansion. *See Bush v. Lucas*, 462 U.S. 367,

388 (1983); *see also Abbasi*, 137 S. Ct. at 1863; *Stanley*, 483 U.S. at 683.

Finally, Plaintiff's complaints about his cell conditions, which he believes

resulted from overcrowding at FCI Ray Brook, were potentially remediable through a

claim for injunctive relief. *Abbasi*, 137 S. Ct. at 1862-63 (potential availability of

injunctive or habeas relief for inmate's conditions-of-confinement claims weighs against

*Bivens* expansion); *accord Hutto v. Finney*, 437 U.S. 678, 685-88 (1978) (confirming

district court's authority to issue injunction that limited time inmates could be held in

isolation cells to 30 days); *Zavala v. Rios*, 721 Fed. Appx. 720, 721 (9th Cir. 2018)

(declining to expand *Bivens* because inmate-petitioner "may seek injunctive and

declaratory relief"); *Simmat v. BOP*, 413 F.3d 1225, 1231 (10th Cir. 2005) (availability of

official-capacity equitable relief claims for constitutional violations renders *Bivens*

remedy unnecessary). Plaintiff has maintained throughout the litigation that he "could

still pursue injunctive relief," and that "injunctive relief has long been recognized as the

proper means for preventing entities from acting unconstitutionally." Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J., (Dkt. No. 111), at 24-25 ("Pl.'s Opp.") (quoting *Malesko*, 534 U.S. at 74).

Plaintiff had a number of alternate means to redress his grievances. That alone is sufficient to reject a *Bivens* remedy here. But, in addition to the alternative available processes, other "special factors counseling hesitation" apply to Plaintiff's generalized overcrowding and conditions of confinement claim. *Wilkie*, 551 U.S. at 550 (quoting *Bush*, 462 U.S. at 378). As noted above, the special factors inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58. A key question, therefore, is whether "Congress would want the Judiciary to entertain a damages suit in a given case," the answer to which should take into account both Congressional action and inaction. *Id*. at 1865.

In the prison context, *Abbasi* explicitly recognized the significance of Congress's inaction; that is, its refusal to create a new damages remedy in the years since *Carlson*. *Abbasi* found clear evidence of Congress's intent to limit the availability of damages remedies for inmate civil rights lawsuits in the PLRA, which was codified in the years between *Carlson* and *Abbasi*. *Id*. at 1856 (citing 42 U.S.C. § 1997e). Congress, *Abbasi* reasoned, had "specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs" when it enacted the PLRA. *Id*. The fact the PLRA "does not provide for a standalone damages remedy" suggests that Congress deliberately "chose not to extend" the *Carlson* remedy "to cases involving other types of prisoner mistreatment." *Id.* The Supreme Court considered this intervening legislation so

significant that it suggested *Carlson* "might have been different if [it] were decided today." *Id*. at 1856-57. Following the Court's unequivocal direction, subsequent decisions by the lower courts have cited the PLRA as a compelling reason to refuse expansion of *Bivens* remedies into new prison contexts. *Gonzalez*, 269 F. Supp. 3d at 61 (PLRA is "very good support for the conclusion that Congress does not want a *Bivens* remedy in this context."); *Kirtman v. Helbig*, No. 4:16-CV-2839, 2018 WL 3611344, at *5 (D.S.C. July 27, 2018) ("Congress's action in this area in light of the PLRA and otherwise not only demonstrates the existence of alternative remedies, but also causes pause for the judicial creation of additional damage remedies."); *Harris v. Dunbar*, No. 2:17-CV-536, 2018 WL 3574736, at *3 (S.D. Ind. July 25, 2018) ("This Court agrees that Congress' activity in the area of prisoners' rights while failing to create new rights for federal inmates does not support the creation of new *Bivens* claims.").

Congress provided further proof of its intent when it amended the PLRA's physical-injury prerequisite a few years ago. *See* Violence Against Women Reauthorization Act of 2013, § 1101(a), Pub. L. No. 113-4, 127 Stat. 54, 134.9; *see also* 42 U.S.C. § 1997e(e). Despite the opportunity to explicitly provide for *Bivens* remedies outside of the *Carlson* context, Congress did not do so. Instead, it limited the PLRA amendments to specifying that sexual assault satisfies the injury requirement.

In addition to Congress's repeated refusal to provide for a *Bivens* remedy, the inherent difficulty of prison administration is another special factor here. *See, e.g., Alexander,* 2018 WL 1399302, at *18 (urgent problems of prison administration require expertise and training that are "within the province of the legislative and executive branches of government"); *Randolph v. FCI Allenwood (Med),* No. 1:17-CV-786, 2018

14

WL 2276246, at *2 (M.D. Pa. Apr. 24, 2018) ("the prison workplace context is a special factor precluding extending the *Bivens* remedy"). This is in line with both *Abbasi* and the extensive Supreme Court precedent recognizing that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform," and that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley,* 482 U.S. 78, 84-85 (1987) (internal citations and quotation marks omitted).

Moreover, the question of whether courts are equipped to micromanage prison administration implicates separation of powers concerns, as prison administration is "a task that has been committed to the responsibility" of the legislative and executive branches of government. *Id.* at 85 ("separation of powers concerns counsel a policy of judicial restraint"); *see also Abbasi,* 137 S. Ct. at 1857 ("When a party seeks to assert an implied cause of action under the Constitution itself ... separation-of-powers principles are or should be central to the analysis."). How BOP administrators and institution-level officials maintain safety and security while managing the population of inmates is a matter of professional judgment, which courts have typically accorded "wide-ranging deference." *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators … should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") (citations omitted). In other words, *Bivens* remedies are seldom an appropriate way to address the impact of an institutional or agency-wide practice on an individual, as prison administrators "bear a significant responsibility for

15

defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *see also Malesko*, 534 U.S. at 74 (noting that *Bivens* suits have "never" been the "proper vehicle for altering an entity's policy"); *Jones v. N.C. Prisoner's Union*, 433 U.S. 119, 137 (1977) (although there is a need to protect "certain basic rights of inmates," prison administration is best left to "those with the most expertise in th[e] field," not the courts).

Plaintiff's claim implicates all of these concerns, as he contends FCI Ray Brook housed an excessive number of inmates and that the square footage of his cell did not meet ACA standards. *See* Pl.'s Opp. (Dkt. No. 111) at 9. Plaintiff does not allege that any Defendant's actions violated his constitutional rights, or that any particular Defendant created the challenged cell conditions. Rather, he alleges that overcrowding at FCI Ray Brook resulted in unconstitutional conditions within his 6-man cell, that his administrative remedies should have put the Defendants "on notice" FCI Ray Brook was "overcrowded," and that issues with noise, sanitation, and cell temperature are "just the things that came along with being overcrowded." *See* SOMF, ¶¶ 8-10. But neither a correctional counselor nor a warden controls the number of inmates remanded to BOP custody, or how they are housed among existing BOP facilities. *See* SOMF, ¶ 14. Nor do they have the ability to alter the physical size of the housing units or cells at FCI Ray Brook. Accordingly, Plaintiff's claim, which challenges institutional or policy decisions, is entirely unsuited to an individual-capacity damages action, which by its nature challenges specific actions by a particular defendant. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *see also* Pl.'s Opp. (Dkt. No. 111) at 4-5 (FCI Ray Brook was overcrowded "even to the extent that it was criticized by a U.S. Senator who noted that

'you don't have to be an expert in criminal justice to know there is a problem here.'"); *id.* at 20 ("After learning of the violations through Mr. Walker's informal complaints and formal grievances, the Senior Managers allowed the policies to go unchanged.").

Moreover, many of the specific conditions Plaintiff challenges are generally applicable to all of the inmates at FCI Ray Brook—and would have remained applicable to Plaintiff after he moved into the two-man cell where he found the conditions acceptable. For instance, Plaintiff claims his bunk was too small for him to sleep comfortably in Cell 127, but the bunk sizes at Ray Brook were standard throughout the institution. SOMF, ¶ 13. Similarly, Plaintiff claims Cell 127 was too cold in the winter and too hot in the summer, a condition that presumably affected the entire institution. SOMF, ¶¶ 11-12. Adjudicating such claims would require the Court to assess the agency's policies and the institution's practices as well as the allocation of resources, and to do so through the vehicle of a personal damages suit against institution-level employees. When neither the problem nor the solution is within the purview of the named Defendants, there is no deterrent value—or even basic fairness—in imposing personal liability. *See Malesko*, 534 U.S. at 74 (refusing to extend *Bivens* liability to contexts that would not advance *Bivens*' core purpose). Rather than a basis for *Bivens* liability, such circumstances are "an unmistakable signal to legislators and officials … either more prison facilities should be built or expanded, or fewer persons should be incarcerated in prisons." *Rhodes v. Chapman*, 452 U.S. 337, 366 (1981) (Brennan, J., concurring).

**CONCLUSION**

For the foregoing reasons, Defendants' Renewed Motion for Summary Judgment should be granted, and the claim against them dismissed, with prejudice.

Dated: March 15, 2019                    Respectfully submitted,

                                         JOSEPH H. HUNT
                                         Assistant Attorney General, Civil Division

                                         C. SALVATORE D'ALESSIO, JR.
                                         Acting Director, Torts Branch, Civil
                                         Division

                                         ANDREA W. MCCARTHY
                                         Senior Trial Counsel, Torts Branch, Civil
                                         Division

                                         */s/ Kelly Heidrich*
                                         KELLY HEIDRICH
                                         Trial Attorney, Torts Branch, Civil Division
                                         JAMES G. BARTOLOTTO
                                         JEAN MARIE CUNNINGHAM
                                         Senior Trial Attorneys, Torts Branch,
                                         Civil Division
                                         United States Department of Justice
                                         Ben Franklin Station, PO Box 7146
                                         Washington, DC 20044
                                         T: (202) 616-4371
                                         F: (202) 616-4314
                                         E-mail: Kelly.Heidrich@usdoj.gov
                                         *Attorneys for the Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all counsel of record by operation of the Court's CM/ECF System.

<u>*/s/ Kelly Heidrich*</u>
KELLY HEIDRICH
Trial Attorney, Civil Division