**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ELLIS WALKER, | ) |
| Plaintiff, | ) Civil Action No. |
| v. | ) 9:11-CV-287 (DJS) |
| DEBORAH G. SCHULT, et al., | ) |
| Defendants. | ) |

**DEFENDANTS' PROPOSED SPECIAL INTERROGATORIES**
**FOR THE JURY REGARDING QUALIFIED IMMUNITY**

Defendants Deborah G. Schult, Russell Perdue, and Jackii Sepanek hereby respectfully submit the following proposed Special Interrogatories for the jury in order to assist the Court in determining the application of qualified immunity, should that be required.

**SPECIAL INTERROGATORIES**

The following questions are to be considered only with regard to the time the Plaintiff, Ellis Walker, was incarcerated in Cell 127 in the Mohawk B unit at FCI Ray Brook, from November 18, 2008 until April 18, 2011. Each question must be answered "Yes" or "No," unless otherwise indicated. If you find that the Plaintiff proved a fact by a preponderance of the evidence, your answer must be "Yes." If you do not find that the Plaintiff proved a fact by a preponderance of the evidence, your answer must be "No." Each question must be evaluated using a preponderance of the evidence standard you applied in your prior deliberations.

**Personal Participation:**

1. Did the Bureau of Prisons, through Defendant Schult's actions or inactions, violate Plaintiff Walker's Eighth Amendment rights?   Yes _____   No _____

2. Did the Bureau of Prisons, through Defendant Perdue's actions or inactions, violate Plaintiff Walker's Eighth Amendment rights?   Yes _____   No _____

3. Did the Bureau of Prisons, through Defendant Sepanek's actions or inactions, violate Plaintiff Walker's Eighth Amendment rights?   Yes _____   No _____

4. Did the Bureau of Prisons have a policy or practice of housing inmates, including Plaintiff Walker, in unconstitutional six-man cells?   Yes _____   No _____

**Conditions of Cell 127:**

1. Did the square footage of Cell 127, standing alone, violate Plaintiff Walker's Eighth Amendment rights?   Yes _____   No _____

2. Was Cell 127 continuously unsanitary to the point that it posed a substantial risk to Plaintiff Walker's health and safety?   Yes _____   No _____

3. Did the occupants of Cell 127 have adequate access to toilets?   Yes _____   No _____

4. Were the toilets in Cell 127 in usable condition?   Yes _____   No _____

5. While in Cell 127, did Plaintiff Walker experience unreasonable exposure to the excrement of his cellmates?   Yes _____   No _____

6. Did Cell 127 lack adequate ventilation to the point of endangering Plaintiff Walker's health?   Yes _____   No _____

7. Was the temperature in Cell 127 during the summer months so excessive as to endanger Plaintiff Walker's health?   Yes _____   No _____

8. Was Cell 127 infested with rodents?   Yes _____   No _____

9. Was Cell 127 infested with insects?   Yes _____   No _____

10. Was Plaintiff Walker denied cleaning supplies such that he was unable to maintain an safe level of sanitation in Cell 127?   Yes _____   No _____

    a. If so, did Defendant Sepanek personally deny Plaintiff Walker adequate cleaning supplies to maintain that level of sanitation?   Yes _____   No _____

11. Was the level of noise in Cell 127 during the overnight hours consistently and unreasonably high?   Yes _____   No _____

12. Was Plaintiff Walker unreasonably denied a ladder when he occupied an upper bunk in Cell 127?   Yes _____   No _____

13. How long did Plaintiff Walker occupy an upper bunk in Cell 127?

    _____

14. Did Plaintiff Walker face an unreasonable risk of serious harm by occupying an upper bunk in Cell 127?   Yes _____   No _____

15. Did Plaintiff Walker face an elevated risk of violence in Cell 127, as compared to inmates in other cells?   Yes _____   No _____

16. Did Plaintiff Walker face an elevated risk of violence in Cell 127 due to gangs, as compared to inmates in other cells?   Yes _____   No _____

17. Was Plaintiff Walker unreasonably denied a duress button in Cell 127?

    Yes _____   No _____

18. Did the conditions of Cell 127 expose Plaintiff Walker to an unreasonably elevated risk of contracting a contagious disease?   Yes _____   No _____

**Notice to Defendants:**

1. Did Plaintiff Walker verbally inform Defendant Schult of conditions in Cell 127 that posed an unreasonable risk of serious harm to him?   Yes _____   No _____

2. Did Plaintiff Walker verbally inform Defendant Sepanek of conditions in Cell 127 that posed an unreasonable risk of serious harm to him?   Yes _____   No _____

3. Did Plaintiff Walker verbally inform Defendant Perdue of conditions in Cell 127 that posed an unreasonable risk of serious harm to him?   Yes _____   No _____

4. Did medical personnel at FCI Ray Brook determine that Plaintiff Walker required a lower bunk?   Yes _____   No _____

    a. If so, did Defendant Sepanek know this?   Yes _____   No _____

5. Did Plaintiff Walker ask Defendant Sepanek on one or more occasions to move him into a 2-man cell?   Yes _____   No _____

**Corrective Action:**

1. Was Defendant Sepanek's response to Plaintiff Walker's BP-8 unreasonable?

    Yes _____ No _____

2. Was Defendant Schult's response to Plaintiff Walker's BP-9 unreasonable?

    Yes _____   No _____

3. If you determined that Plaintiff Walker spoke with Defendant Perdue on one or more occasions about the conditions in Cell 127, was Defendant Perdue's response unreasonable?   Yes _____   No _____

4. If you determined that Plaintiff Walker asked Defendant Sepanek on one or more occasions to move him into a 2-man cell, was Defendant Sepanek's failure to do so unreasonable?

4

Yes _____   No _____

**ACA Accreditation Process:**

1. Did Defendant Schult act with deliberate indifference to Plaintiff Walker's health and safety by failing to report to the ACA that Cell 127 was not in compliance with ACA Standard 4-4132?

   Yes _____   No _____

2. Did Defendant Perdue act with deliberate indifference to Plaintiff Walker's health and safety by failing to report to the ACA that Cell 127 was not in compliance with ACA Standard 4-4132?

   Yes _____   No _____

3. Did Defendant Sepanek act with deliberate indifference to Plaintiff Walker's health and safety by failing to report to the ACA that Cell 127 was not in compliance with ACA Standard 4-4132?

   Yes _____   No _____

4. Did Defendant Sepanek act with deliberate indifference to Plaintiff Walker's health and safety by maintaining six-man cells that did not comply with ACA Standard 4-4132?   Yes _____   No _____

5. Did Defendant Schult act with deliberate indifference to Plaintiff Walker's health and safety by maintaining six-man cells that did not comply with ACA Standard 4-4132?

   Yes _____   No _____

6. Did Defendant Perdue act with deliberate indifference to Plaintiff Walker's health and safety by maintaining six-man cells that did not comply with ACA Standard 4-4132?

   Yes _____   No _____

**Injuries:**

1. Did Defendant Schult cause Plaintiff Walker to suffer injury as a direct result of her unconstitutional conduct?   Yes _____   No _____

2. Did Defendant Sepanek cause Plaintiff Walker to suffer injury as a direct result of her unconstitutional conduct?   Yes _____   No _____

3. Did Defendant Perdue cause Plaintiff Walker to suffer injury as a direct result of her unconstitutional conduct?   Yes _____   No _____

Dated: January 29, 2020

GRANT C. JAQUITH
United States Attorney
Northern District of New York

THOMAS SPINA
Civil Chief
Northern District of New York
445 Broadway, Room 542
Albany, NY 12207-2942

Respectfully submitted,

JOSEPH R. HUNT
Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director
Torts Branch, Civil Division

ANDREA W. MCCARTHY
Senior Trial Counsel, Torts Branch

*/s/James G. Bartolotto*
JAMES G. BARTOLOTTO
Senior Trial Attorney
JEAN MARIE CUNNINGHAM
Senior Trial Attorney
KELLY HEIDRICH
Trial Attorney
Torts Branch, Civil Division
United States Department of Justice

>P.O. Box 7146, Ben Franklin Station
>Washington, DC 20044
>Tel: (202) 616-4174
>Fax: (202) 616-4314
>james.bartolotto@usdoj.gov

>*Attorneys for the Defendants*